492 S.E.2d 55

**Amy SUMMER, Appellant,**

**v.**

**Robert R. CARPENTER, Respondent.**

**No. 24689.**

Supreme Court of South Carolina.

Heard March 19, 1997.

Decided Sept. 22, 1997.

Rehearing Denied Oct. 21, 1997.

38

Mark W. Hardee, of Lewis, Babcock & Hawkins, L.L.P., Columbia, for appellant.

James W. Alford, Curtis W. Dowling, and Andrew E. Haselden, of Banes, Alford, Stork & Johnson, L.L.P., Columbia, for respondent.

BURNETT, Justice:

Appellant brought this legal malpractice action against respondent alleging he was negligent for failing to institute suit against the South Carolina Department of Highways and Public Transportation (the Highway Department). Appellant seeks review of the trial judge's order granting respondent's motion for summary judgment. We affirm in part and reverse in part.

## UNDERLYING FACTS

Appellant was rendered a quadriplegic as a result of a single car accident on June 29, 1989, at the intersection of Heckle Boulevard and Hollis Lakes Road near Rock Hill, South Carolina. At the time of the accident, appellant and Lisa Buchan were passengers in the car driven by appellant's sister, Kari Summer.

On April 20, 1991, appellant hired respondent. Respondent filed a complaint against Jim Lineberger Grading & Paving

Company, Inc. (Lineberger) on June 28, 1991. In this complaint, respondent alleged Lineberger's negligent construction of Heckle Boulevard proximately caused appellant's injuries. More particularly, respondent alleged Lineberger "so constructed Heckle Boulevard that a bump or dip crossed Hollis Lakes Road ... constituting a hazard to traffic ...". The statute of limitations ran against the Highway Department on June 29, 1991.[1] Approximately three months after filing suit, respondent determined he had a conflict of interest, and he was relieved as appellant's counsel.

Another attorney assumed representation of appellant. Two years later, appellant's case against Lineberger was settled for a lump sum of $121,000 plus an annuity providing for monthly payments of $600, guaranteed for 30 years or until appellant's death. At approximately the same time, Buchan's lawsuit against Lineberger was dismissed pursuant to Lineberger's motion for summary judgment.

## ACTION AGAINST RESPONDENT

Appellant commenced this legal malpractice action against respondent asserting she was unable to obtain full recovery for her injuries because the Highway Department was not included in the lawsuit against Lineberger. At the hearing on respondent's motion for summary judgment, appellant argued respondent should have brought an action against the Highway Department for negligent design and negligent maintenance of the intersection.

The trial court concluded, even if respondent was negligent in failing to bring an action against the Highway Department, respondent's negligence did not prejudice appellant because she would not have had a successful action against the Highway Department. Specifically, the trial judge found the Highway Department was immune from suit under several statutory defenses in the South Carolina Tort Claims Act (the Act)[2] and, further, under the doctrine of joint and several liability,

---

1. South Carolina Code Ann. § 15–78–100(a) (Supp.1996) (an action for damages under the Tort Claims Act may be instituted at any time within two years after the loss was or should have been discovered).

2. S.C.Code Ann. §§ 15–78–10 to –190 (Supp.1996).

the presence or absence of the Highway Department in the underlying suit was immaterial. Consequently, the trial judge granted respondent's motion for summary judgment.

## ISSUES

I. Did the trial judge err by holding the Highway Department would have had design immunity? Is appellant's negligent maintenance argument preserved for consideration on appeal?

II. Did the trial judge err by holding the Highway Department would have been immune from suit due to the exercise of its discretion pursuant to § 15–78–60(5)?

III. Did the trial judge err by holding the Highway Department would have been immune from suit pursuant to § 15–78–60(15)?

IV. Did the trial judge err by holding failure to institute suit against the Highway Department did not prejudice appellant due to the doctrine of joint and several liability?

## DISCUSSION

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *City of Columbia v. American Civil Liberties Union,* 323 S.C. 384, 475 S.E.2d 747 (1996). In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party. *Id.; Manning v. Quinn,* 294 S.C. 383, 365 S.E.2d 24 (1988).

■ In a legal malpractice action, the plaintiff must prove (1) the defendant was negligent, (2) the defendant's negligence proximately caused the plaintiff's injuries, and (3) damages. *Shealy v. Walters,* 273 S.C. 330, 256 S.E.2d 739 (1979). In other words, a plaintiff must show she most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice. *Manning, supra; Floyd v. Kosko,* 285 S.C. 390, 329 S.E.2d 459 (Ct.App.1985).

### I.

Appellant argues the trial judge erred by determining the Highway Department was not negligent in its design of the

intersection as a matter of law. Appellant contends her case against the Highway Department would have been based on negligent design *and maintenance*. She claims she presented evidence the Highway Department was on notice the intersection was dangerous and its failure to properly repair it proximately caused her injuries. We disagree.

■ As for negligent design, the Act provides absolute governmental immunity from liability for loss resulting from the design of highways and other public ways. S.C.Code Ann. § 15–78–60(15). Therefore, even if the Highway Department was on notice the design of the intersection was dangerous, the Highway Department was immune from suit for negligent design. Accordingly, the trial judge properly granted summary judgment for respondent on the issue of negligent design.

■ Appellant's argument concerning negligent maintenance is not preserved for appeal. The trial judge did not rule on appellant's maintenance claim in his order granting summary judgment and appellant did not request the trial judge reconsider his order to address this issue. Accordingly, appellant's negligent maintenance argument is not proper for consideration on appeal. *Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991) (where trial judge did not explicitly rule on issue at trial and party did not make Rule 59(e), SCRCP, motion to amend for a ruling, it is error for an appellate court to consider the issue).

■ Nonetheless, with regard to appellant's negligent maintenance argument, the evidence indicates the intersection of Hollis Lakes Road and Heckle Boulevard was designed by the Highway Department and was constructed by Lineberger in accordance with the Highway Department's plans and specifications. Two bumps or dips which were part of the original design of the intersection resulted from tying the two roads together.[3]

Lineberger began construction of the intersection in late April 1989. Even though the project was still under construc-

---

**3.** A Highway Department engineer explained the bumps resulted from Heckle Boulevard changing from a single lane road into a four lane road at the intersection.

tion, the intersection was opened for travel on April 26th. Shortly thereafter, two individuals submitted claims with the Highway Department for damage to their vehicles due to the bumps in the intersection. The Highway Department paid the two claims associated with the damage and instructed the paving company to level or "wedge" the intersection to smooth the bumps in early May 1989.[4] The wedging, described as a "slight modification" or "alteration" of the original plans and specifications, altered the slope of the intersection but did not remove the bumps entirely. The Highway Department posted two "bump" signs in advance of the intersection. At the time of appellant's accident, approximately two months later, the intersection was still under construction. The Highway Department accepted the completed project "long after" appellant's accident.

Respondent's engineering expert testified the wedging work corrected any problem which may have existed at the intersection and the intersection was safe for the travelling public at the posted speed limit of 45 mph. Appellant's engineering experts stated the design and maintenance of the intersection created a dangerous condition and the attempt to correct the bumps by wedging was inadequate. Appellant's experts concluded the bumps were a contributing proximate cause of appellant's accident.[5]

Appellant has attempted to construe her action against the Highway Department as one for negligent maintenance rather than negligent design since the Highway Department is immune from suit for negligent design. *See* § 15–78–60(15). However, the evidence indicates the wedging in May 1989 was only a modification of the original design for the intersection. Moreover, at the time of the accident, the intersection was still under construction and the project had yet to be returned to the Highway Department. These circumstances indicate the

---

**4.** Lineberger subcontracted the paving. The evidence indicates the paving subcontractor followed the Highway Department's plans and specifications for the project, including the wedging.

**5.** Appellant's sister, the driver of the automobile, admitted in her deposition she saw the "road construction" and "bump" signs, knew the speed limit was 40 mph, but was driving 55 to 60 mph at the time of the accident.

intersection was still under design and not subject to maintenance by the Highway Department. Accordingly, even if she had preserved the issue of negligent maintenance for the Court's consideration, appellant would not have had a successful action for negligent maintenance and, therefore, she has failed to establish any prejudice by respondent's failure to file suit against the Highway Department.

■ Further, it would be a poor policy decision to conclude the Highway Department waives its design immunity when it alters its original design during the course of construction. Preserving design immunity under these circumstances would encourage the Highway Department to modify and/or improve designs during an ongoing project and, thereby, improve both the construction of and safety on the highways. *See* S.C.Code Ann. § 15–78–20(f) (Supp.1996) (provisions of Act establishing exemptions to liability must be liberally construed in favor of limiting the liability of the State).

■ Finally, we agree with appellant the Highway Department was on notice the original bumps in the intersection were causing property damage to vehicles. After receipt of two property damage claims, the Highway Department made improvements to the intersection. We find nothing in the record, however, which suggests the Highway Department was on notice the wedging was insufficient to correct the allegedly dangerous condition at the intersection. In fact, the evidence indicates to the contrary: there were no reported damage claims after the wedging. Accordingly, we conclude the Highway Department was not on notice of problems at the intersection after the wedging and, therefore, had no duty to make further improvements to the intersection.

## II.

Appellant contends the trial judge erred by ruling the Highway Department would have been immune from suit pursuant to § 15–78–60(5) which provides immunity from liability for acts arising out of the exercise of discretion by a government agency. We agree.[6]

Section 15–78–60(5) provides:

---

6. For purposes of this argument, we are ignoring the Highway Department's defense of design immunity. Section 15–78–60(15).

The governmental entity is not liable for loss resulting from ... the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee....

 Mere room for discretion on the part of the entity is not sufficient to invoke the discretionary immunity provision. Discretionary immunity is contingent on proof the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice. Further, the entity must establish, in weighing the competing considerations and alternatives, it utilized accepted professional standards appropriate to resolve the issue. *Strange v. S.C. Dept. of Highways & Public Transportation,* 314 S.C. 427, 445 S.E.2d 439 (1994); *Foster v. S.C. Dept. of Highways & Public Transportation,* 306 S.C. 519, 413 S.E.2d 31 (1992). The government entity bears the burden of establishing discretionary immunity as an affirmative defense. *Niver v. S.C. Dept. of Highways & Public Transportation,* 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990).

 Respondent presented evidence which indicates (1) the design used for the intersection was common and (2) while respondent's expert would have selected another design, the chosen design was not wrong. This evidence does not establish respondent considered various design options for the intersection and then selected the chosen design plan after carefully weighing competing considerations.[7] Accordingly, the trial judge erred in concluding the Highway Department would have been immune from liability under the discretionary exception to the Act as a matter of law. *Id.*

### III.

Appellant argues the trial judge erred by concluding the Highway Department would have been immune from suit under § 15–78–60(15) since it was protected by an indemnity bond. Appellant asserts respondent did not establish the

---

7. According to the affidavit of one of appellant's engineering experts, the intersection was improperly designed and the design was below the standard of care for civil engineers.

indemnity bond purchased by Lineberger would have covered the Highway Department in a negligence action. We agree.

In relevant part, S.C.Code Ann. § 15–78–60(15) provides:

Governmental entities are not liable for loss on public ways under construction when the entity is protected by an indemnity bond.

Although the statute simply refers to the presence of an indemnity bond, it is our opinion the legislature intended this provision to exempt a governmental entity from liability when the indemnity bond actually protects the governmental entity from liability for negligence. Otherwise, an "indemnity bond" which does not provide coverage in the event of negligence would nonetheless be considered to provide immunity from negligence actions of government entities. *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994) (however plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning if to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature or would defeat the plain legislative intention).

It is undisputed the Highway Department was protected by a bond entitled "Performance and Indemnity Bond" for the Hollis Lakes Road and Heckle Boulevard construction project. The language in the body of this bond, however, does not indicate an agreement by the surety to indemnify the Highway Department against a third party claim for personal injury as a result of the construction project, but simply to protect the Highway Department from costs if Lineberger failed to perform under the terms of the contract.[8] Accordingly, the trial judge erred in holding the indemnity bond exception would have applied in appellant's action against the Highway Department. *Strange, supra* (burden of establishing limitation on liability under Tort Claims Act is on government entity asserting it as affirmative defense).

---

8. South Carolina Code Ann. § 57–5–1660 (1991) requires highway department contractors to furnish a "performance and indemnity bond" with a surety sufficient to satisfy the full amount of the contract.

48

## IV.

Appellant argues the trial judge erred by concluding the presence or absence of the Highway Department from her underlying suit was immaterial since, under the doctrine of joint and several liability, appellant would have been entitled to a full recovery from Lineberger. We agree.

If suit had been instituted against Lineberger *and* the Highway Department, appellant asserts Lineberger would have claimed the Highway Department's negligence alone proximately caused appellant's injuries since it designed/maintained the intersection and Lineberger only followed the Department's specifications in constructing the intersection. By affidavit, appellant's counsel in her action against Lineberger stated "[t]he presence of the [Highway Department] would have most likely resulted in a much higher settlement or verdict for [appellant]."

Based on the evidence presented, if suit had been filed against both Lineberger and the Highway Department, we agree Lineberger would have likely claimed it simply followed the Highway Department's plans and specifications in constructing the intersection. Nonetheless, as noted above and correctly determined by the trial judge, the Highway Department would have been immune from suit under the design immunity provision of the Act. Section 15–78–60(15). Accordingly, joint and several liability would have been inapplicable since only one tortfeasor, Lineberger, would have existed. *See generally M & T Chemicals, Inc. v. Barker Industries, Inc.*, 296 S.C. 103, 370 S.E.2d 886 (Ct.App.1988) (under the doctrine of joint and several liability, joint tortfeasors are liable for the plaintiff's damages, both jointly and severally).

For reasons stated above, the order of the trial judge is AFFIRMED IN PART AND REVERSED IN PART.

FINNEY, C.J., and MOORE and WALLER, JJ., concur.

TOAL, J., dissents in separate opinion.

TOAL, Justice, dissenting:

I respectfully dissent as to Issue I, the potential negligent maintenance claim against Highway Department. However, I

first must note that there are, in fact, few points of disagreement between me and the majority. In Issues II (discretionary immunity issue), III (indemnity bond immunity issue), and IV (joint and several liability issue) of this case, the majority has found error by the trial court. I agree wholly with the majority's reasoning and conclusions regarding those issues.

However, I respectfully disagree about the merits of Issue I, the only issue on which the majority affirms the trial court's grant of summary judgment. In my opinion, Respondent Carpenter ("Lawyer") was not entitled to summary judgment in this legal malpractice action. I believe Appellant Summer's ("Passenger") potential negligent maintenance claim against Highway Department had at least some factual and legal basis and at least some chance of success. Accordingly, there existed a genuine issue of material fact regarding whether Lawyer was negligent for failing to sue Highway Department.

First, contrary to the majority's claim, Passenger's negligent maintenance argument is preserved for appeal. One of the relevant questions in this case is whether this issue should be characterized as one of negligent design or of negligent maintenance. By characterizing it as a *design* issue, the trial court's order implicitly ruled on the negligent maintenance issue. I believe it is overly technical to require Passenger to have brought a Rule 59(e) motion when the import of the trial court's order was perfectly clear.

Additionally, however, some of the evidence in the Record suggests the issue was a maintenance issue and that Highway Department was negligent in its maintenance of the intersection. Dr. Parsonson, an engineering professor at Georgia Tech, opined by affidavit that Highway Department's attempt to correct the bumps in the road "was unreasonable and inadequate and below the standard of care expected for highway *maintenance* at the time in question." (emphasis added). Dr. Parsonson concluded Highway Department had been negligent both in its design and in its maintenance of the intersection in question. Similarly, Jeffrey Clark, a reconstruction and forensic engineer, stated the surface of the road should have been smooth. Clark's affidavit suggests Highway Department's actions in performing the wedging procedure at

the intersection were inadequate to correct the original problem.

In my opinion, the expert testimony, as well as the testimony concerning Highway Department's actual knowledge of the danger of the intersection and its decision to employ "wedging" to correct the problem, should preclude any grant of summary judgment to Lawyer. When viewed in the light most favorable to Passenger, *see, e.g., Manning v. Quinn*, 294 S.C. 383, 365 S.E.2d 24 (1988) (in summary judgment motion, all evidence and its inferences must be viewed in light most favorable to nonmoving party), the evidence presented to the trial judge demonstrated a genuine issue of material fact regarding Passenger's ability to prevail on the negligent maintenance issue. To survive a summary judgment motion, Passenger need have shown no more.

I note this does not mean Passenger necessarily should prevail against Lawyer. At trial, Passenger would have to demonstrate that the negligent maintenance claim probably would have succeeded, and it is certainly possible she could not meet her burden.[1] At the summary judgment stage, however, Passenger need not prove her case. Rather, she need only demonstrate there is a genuine issue of material fact regarding the merits of her claim; *i.e.*, she must show that she *has* a case to begin with. I believe Passenger has met that burden and would not, therefore, deny her her day in court.

For the foregoing reasons, I concur as to Issues II, III, and IV, and dissent as to Issue I.

---

1. In my view, the majority erred by weighing the evidence rather than simply determining whether the evidence presented a genuine issue of material fact, the appropriate test for summary judgment.