530 S.E.2d 890

**BUGSY'S, INC., Highway Coffee, Inc., Pool Services Unlimited of MB, Inc., 6401 Convenience, Inc., and Candy Treats, Inc., Appellants,**

v.

**The CITY OF MYRTLE BEACH, Respondent.**

**No. 25111.**

Supreme Court of South Carolina.

Heard Nov. 2, 1999.

Decided April 24, 2000.

88

Howell V. Bellamy, Jr., and Douglas M. Zayicek, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for appellants.

James B. Van Osdell and Cynthia Graham Howe of Van Osdell, Lester, Howe & Jordan, P.A., of Myrtle Beach, for respondent.

BURNETT, Justice:

This action challenges the validity of Respondent the City of Myrtle Beach's (the City's) Zoning Ordinance 96–56 which, in part, affects some businesses which operate video poker machines. The master-in-equity determined Ordinance 96–56 was valid. Alternatively, the master-in-equity held appellants were operating in violation of the prior zoning ordinance. We affirm.

## FACTS

Appellant Bugsy's, Inc., is a sports bar and restaurant located within the City. Appellants King's Highway Coffee, Inc., 6401 Convenience, Inc., and Candy Treats, Inc., are retail businesses located in separate rooms inside Bugsy's, Inc. These four appellants each lease and operate five video poker machines from Appellant Pool Services Unlimited of M.B.[1]

Pursuant to the City's zoning ordinance, video poker machines may be maintained as a principal use in seven districts. Video poker machines are only permitted as accessory uses in district AC–2.[2] Bugsy's is located in district AC–2.[3] Bugsy's general manager testified the businesses gross $400,000 a month from video poker machines and $20,000 a month from other sales. Hence, 95% of Bugsy's gross proceeds is generated by the operation of video poker machines.

Both prior to and after adoption of Ordinance 96–56, the City's comprehensive zoning ordinance defines "accessory use," in part, as follows:

Section 204.1 *Accessory building or use.* An accessory building or use is:

(a) Subordinate to and serves a principal building or principal uses;

(b) Subordinate in area, extent, or purpose to the principal use served;

(c) Designed for the comfort, convenience, or necessity of occupants of the principal use served.

At all times, the City's comprehensive zoning ordinance has permitted accessory uses provided, among other requirements, the accessory use is customarily incidental to the permitted use. For all commercial and business uses, Ordinance 96–56 added the following description of an accessory use:

---

1.  Hereafter, appellants are collectively referred to as "Bugsy's."

2.  Prior to adoption of Ordinance 96–56, video poker machines were only permitted as accessory uses in AC–2 districts.

3.  An accommodations/commercial zone provides a transition between heavy commercial districts and residential districts.

1102.d. In the case of commercial or business uses, does not produce gross proceeds which exceed forty percent of the combined gross proceeds produced by the accessory use and the permitted principle [sic] use; and does not occupy in excess of forty percent of the available floor space in the business activity.

With regard to coin-operated amusement devices, Ordinance 96–56 added the following description of an accessory use:

1102.6 *Coin-operated amusement devices.* Coin-operated amusement devices permitted as accessory uses are subject to the following restrictions:

a. Maximum number of machines per principal use is five.[4]

b. Only allowed as an accessory use to bars and restaurants of at least 1,000 square feet of gross floor space or as an accessory use to retail facilities of at least 2,000 square feet of gross floor space.[5]

Ordinance 96–56 provides:

703.10.6 *Cessation.* Coin operated amusement devices operated as accessory uses not in conformance with the provisions ... must be removed within 2 years from the effective date of this ordinance....

The effective date of Ordinance 96–56 is May 28, 1996.

It is undisputed Bugsy's proceeds from video game machines exceed 40% of the gross proceeds of each of the businesses. It is also undisputed the three retail businesses do not meet the 2000 square foot requirement or the 40% area distribution requirement to operate video game machines as accessory uses pursuant to Ordinance 96–56.[6] The City has never cited Bugsy's for violation of any zoning ordinance.

---

**4.** *See* S.C.Code Ann. § 12–21–2804(A)(Supp.1998)(South Carolina Department of Revenue may not issue machine permits for more than five machines at a single place or premises).

**5.** Ordinance 96–56 also increased the number of parking spaces required at businesses with coin-operated amusement devices. Bugsy's complies with the parking requirement.

**6.** Carolina Bugsy's, Inc., who is not a party to this action, owns the leasehold interest in the property where the four businesses are located. Bugsy's, Inc., occupies over 4000 square feet. Each retail business inside occupies less than 300 square feet of space.

## ISSUES

I. Did the master-in-equity err by ruling Ordinance 96–56 is not preempted by state law?

II. Did the master-in-equity err by ruling Ordinance 96–56 does not conflict with state law?

III. Did the master-in-equity err by ruling Ordinance 96–56 is not a criminal ordinance?

IV. Is Ordinance 96–56 arbitrary, capricious, or unreasonable?

V. Did the master-in-equity err by ruling the two year amortization period is valid?

## DISCUSSION

### I.

Bugsy's argues the State has both expressly and impliedly preempted the regulation of video poker machines and, therefore, the City was precluded from passing Ordinance 96–56. Specifically, Bugsy's asserts the General Assembly expressly retained state regulatory control of video poker machines through S.C.Code Ann. § 12–21–2720(B)(Supp.1998) which provides: "[n]o municipality may limit the number of machines within the boundaries of the municipality." It asserts the General Assembly impliedly retained State control of video poker machines by enacting a comprehensive regulatory scheme in the Coin–Operated Machines and Devices and Other Amusements Act [7] and Video Game Machines Act.[8] We disagree.

■ Determining whether a local ordinance is valid is a two-step process. The first step is to determine whether the municipality had the power to adopt the ordinance. If no power existed, the ordinance is invalid. If the municipality had the power to enact the ordinance, the second step is to determine whether the ordinance is consistent with the Constitution and general law of the State. *Diamonds v. Greenville County,* 325 S.C. 154, 480 S.E.2d 718 (1997).

---

7. S.C.Code Ann. §§ 12–21–2703 to –2750 (Supp.1998).

8. S.C.Code Ann. §§ 12–21–2770 to –2809 (Supp.1998).

■ In order to pre-empt an entire field, an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way. *Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. 550, 397 S.E.2d 662 (1990). In *Fine Liquors, Ltd.,* the Court held, although the General Assembly gave the Alcoholic Beverage Control Commission the sole and exclusive authority to sell beer, wine, and alcohol, it had not preempted the field so as to preclude the Town of Hilton Head from passing a zoning ordinance which prohibited internally illuminated "red dot" signs.

■ Section 12–21–2720(B) does not express the State's intent to preempt the field of video poker machines. It only prohibits municipalities from limiting the number of video poker machines within their boundaries. While Ordinance 96–56 effectively limits the location of video game machines in the City, it does not limit the number of machines within the municipality.[9]

■ Moreover, while the General Assembly has enacted a comprehensive scheme regulating many aspects of video poker machines, the scheme does not manifest an intent to prohibit any other enactment from touching on video poker machines. State regulation of video poker machines does not preclude a municipality from passing a zoning ordinance which impacts businesses which have video game poker like the State's regulation of the sale of beer, wine, and alcohol does not preclude a municipality from passing a zoning ordinance which impacts a business which sells those products.

Bugsy's maintains *Martin v. Condon,* 324 S.C. 183, 478 S.E.2d 272 (1996), supports its argument regarding the preemptive effect of the video gaming statutes and "directly controls the outcome of this case." In *Martin,* the plaintiff challenged a .statute which provided for county referenda to determine the legality of non-machine cash payouts for coin-operated video machine games. The Court held because the local option law could criminalize conduct which was legal under state law, it was constitutionally prohibited. *Martin*

---

9. As noted above, the zoning ordinance provides seven districts in which video games may be maintained as principal uses.

did not hold the State preempted local government from taking any action which touches video poker machines.

## II.

Bugsy's argues Ordinance 96–56 directly conflicts with two provisions of State law and, therefore, is invalid. We disagree.

■ First, Bugsy's argues because the 40% gross proceeds requirement of Ordinance 96–56 is more restrictive than the State's "primary and substantial" gross proceeds requirement in S.C.Code Ann. § 12–21–2804(A)(Supp.1998), the ordinance impermissibly conflicts with State law. We disagree.

■ Where an ordinance is not preempted by State law, the ordinance is valid if there is no conflict with State law. In order for there to be a conflict between a state statute and a municipal ordinance, both must contain either express or implied conditions which are inconsistent and irreconcilable with each other. If either is silent where the other speaks, there is no conflict. *Barnhill v. City of North Myrtle Beach,* 333 S.C. 482, 511 S.E.2d 361 (1999).

Section 12–21–2804(A) provides the South Carolina Department of Revenue (DOR) may not issue permits for more than five machines at a single place or premises. It further provides: "[n]o machine may be licensed or relicensed in any location where the primary and substantial portion of the establishment's gross proceeds is from machines licensed under Section 12–21–2720(A)(3) . . .".

Section 12–21–2804(A) governs the DOR's issuance of machine permits. The 40% gross proceeds requirement of Ordinance 96–56 is a portion of the City's definition of accessory use for commercial and business zoning purposes. Assuming the DOR's definition of "primary and substantial" is less restrictive than Ordinance 96–56's 40% gross proceeds requirement, the two provisions are neither inconsistent nor irreconcilable with each other because the definitions are for different purposes. The DOR's "primary and substantial" definition governs which establishments may obtain machine licenses from the DOR while Ordinance 96–56's 40% gross proceeds requirement governs where those establishments

may be located within the City. There is no conflict between State law and the City's ordinance. *See id.* (state statute regulating activity on state waters is not irreconcilable with city ordinance regulating activity on public beach); *see also Wrenn Bail Bond Service, Inc. v. City of Hanahan,* 335 S.C. 26, 515 S.E.2d 521 (1999) (state statute licensing bail bondsmen is not irreconcilable with city's business license ordinance); *Town of Hilton Head Island v. Fine Liquors, Ltd., supra* (state statute providing size and location of "red dots" did not conflict with city's prohibition against internal illumination of signs).

■ Second, Bugsy's contends Ordinance 96–56's definition of "game arcade" is inconsistent with the DOR's "single place" or "premise" definition. The master-in-equity did not rule on this issue in the final order and Bugsy's post-trial motion did not request the master-in-equity specifically rule on this issue. Accordingly, this issue is not preserved for consideration on appeal. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997) (where trial judge did not rule on issue at trial and party did not make a Rule 59, SCRCP, motion for a ruling, issue is not preserved for appellate review).

### III.

■ Bugsy's claims because the ordinance provides criminal penalties for its violation, Ordinance 96–56 is a criminal law in violation of *Martin v. Condon,* 324 S.C. 183, 478 S.E.2d 272 (1996). We disagree.

Although Ordinance 96–56 provides criminal penalties for its violation,[10] it does not criminalize the operation of video game machines. It merely provides criminal penalties for violation of provisions of the zoning ordinance. So long as businesses comply with the requirements of the zoning ordinance, they can operate video game machines. Accordingly, unlike *Martin,* Ordinance 96–56 does not criminalize activity which is legal statewide. *See* Discussion I.

---

**10.** "A violation of any ordinance or resolution, adopted pursuant to the provisions of this act is hereby declared to be a misdemeanor under the law of the state and, upon conviction thereof, an offender shall be liable to a fine of not more than $500.00, or imprisonment not exceeding 30 days, or both."

### IV.

Bugsy's argues Ordinance 96–56 does not bear any relationship to the public health, safety, morals, or general welfare of the community and, therefore, was unreasonably, arbitrarily, and capriciously adopted. This issue was not ruled on by the master-in-equity. Bugsy's post-trial motion did not seek a ruling on the issue. Accordingly, this issue is not preserved for review. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997).

### V.

Bugsy's contends the master-in-equity erred by ruling Ordinance 96–56's two-year amortization period is reasonable. It contends A) the City cannot "terminate [Bugsy's] vested right in the operation of video game machines absent a factual showing the continuation of its nonconforming use is a detriment to the public's health, safety or welfare" and B) the City did not balance the benefit to the public against the detriment to the landowner in determining an appropriate amortization period. We disagree.

### A.

Bugsy's first contention, that it has a vested right to continue operating video game machines absent a showing the operation of those machines is a detriment to the public's health, safety, or welfare, is not preserved for review. The master-in-equity did not rule on this issue. Bugsy's post-trial motion did not seek a ruling on the issue. Accordingly, this issue may not be considered on appeal. *Id.*

### B.

An amortization provision is valid if reasonable. *Centaur, Inc. v. Richland County*, 301 S.C. 374, 392 S.E.2d 165 (1990). Reasonableness is determined by "[b]alancing the public gain against the private loss...". *Id. quoting Collins v. City of Spartanburg*, 281 S.C. 212, 214–15, 314 S.E.2d 332, 333 (1984). The burden is upon the petitioner to prove the unreasonableness of the amortization period. The period is presumed valid unless the petitioner demonstrates its loss

outweighs the public gain. *Centaur, Inc. v. Richland County,* 301 S.C. 374, 392 S.E.2d 165 (1990).

■ The Zoning Administrator testified in determining an appropriate amortization period, he considered the cost of the video poker machines. He stated he believed a machine costs between $3,500 and $8,000 and he used a "high amount." The Zoning Administrator stated he learned on the day of the hearing that a machine costs $7,500.

The record indicates the two year amortization period reasonably allowed Bugsy's to recoup the rental cost of its machines. There is no evidence to the contrary. *Id.* Bugsy's failed to prove its loss outweighed the public gain. *Id.*[11]

**AFFIRMED.**

FINNEY, C.J., TOAL, MOORE, JJ., and Acting Justice WILLIAM T. HOWELL, concur.

---

11. Bugsy's also argues the master-in-equity erred by ruling it was operating in violation of the prior zoning ordinance. Because we affirm the master-in-equity's ruling upholding the validity of Ordinance 96–56, we need not address the alternative holding that Bugsy's was operating in violation of the prior ordinance.