660 S.E.2d 264

The FOOTHILLS BREWING CONCERN, INC., 4MB, Inc., Greenville Wings, Inc., Addy's, Inc., City Tavern, Inc., Greenville 0036, LLC, Euphoria, LLC, WTK, Inc., Drumcliff Abbey, Inc., and Club Management, LLC, Respondents.

v.

The CITY OF GREENVILLE, Appellant.

No. 26467.

Supreme Court of South Carolina.

Heard Jan. 9, 2008.

Decided March 31, 2008.

Rehearing Denied May 7, 2008.

358

Ronald W. McKinney, of Greenville, for appellant.

Randall Scott Hiller, of Greenville, for respondent.

Justice WALLER.

In this direct appeal, the trial court ruled that a municipal ordinance banning smoking in bars and restaurants is preempted by State law and violates the State Constitution. The City of Greenville (the City) appeals from the trial court's order. We reverse.

## FACTS

In 1987, the City was the first municipality in South Carolina to pass an ordinance regulating smoking in public places. The 1987 ordinance applied to such areas as government-owned buildings, theaters, and office buildings. However, the 1987 ordinance exempted bars, and for restaurants, it authorized designated smoking areas.

In 1990, the Legislature enacted the Clean Indoor Air Act of 1990. *See* S.C.Code Ann. § 44–95–10 *et seq.* (2002). The Clean Indoor Air Act provides that it is "unlawful for a person to smoke or possess lighted smoking material in any form" in various public indoor areas such as: (1) public schools; (2) daycare centers; (3) health care facilities; (4) government buildings; (5) elevators; (6) public transportation vehicles; and (7) public performing art centers. *See* § 44–95–20.[1] A violation of the Clean Indoor Air Act constitutes a misdemeanor, and upon conviction, the violator "must be fined not less than ten dollars nor more than twenty-five dollars." § 44–95–50.

Because of the reported dangers of second-hand smoke, the City sought to more comprehensively regulate smoking in public places. Therefore, on October 30, 2006, the City enacted Ordinance No. 2006–91 (the Ordinance). In the "Findings and Determinations" section of the Ordinance, the City stated as follows:

> Numerous studies have found that tobacco smoke is a major contributor to indoor air pollution, and that breathing second hand smoke ... is a cause of disease in healthy nonsmokers, including heart disease, stroke, respiratory disease, and lung cancer. . . .

> The City recognizes that smoke creates a danger to the health and safety of the public at large and that, in order to protect the health and welfare of the public, it is necessary

---

1. Some exceptions are allowed under the Clean Indoor Air Act such as designated smoking areas in employee break areas and private offices. *See* § 44–95–20. Furthermore, the statute expressly permits certain expansions in the delineated categories; for example, the statute does not prohibit: (1) school districts from providing for a smoke-free campus; or (2) health care facilities from being smoke-free. *Id.*

to restrict smoking in the manner provided for in this ordnance.

The Ordinance prohibits smoking in: (1) all enclosed public places, including bars and restaurants; (2) places of employment; and (3) certain outdoor areas, such as stadiums and zoos.

The section of the Ordinance governing violations and penalties states as follows, in pertinent part:

  A.  A person who smokes in an area where smoking is prohibited by the provisions of this Ordinance shall be **guilty of an infraction,** punishable by a fine. . . .

  B.  A person who owns, manages, operates, or otherwise controls a public place or place of employment and who fails to comply with the provisions of this Ordinance shall be **guilty of an infraction,** punishable by [a fine].

  . . .

  D.  Violation of this Ordinance is hereby declared to be a **public nuisance.**

(Emphasis added).

Respondents all own and operate restaurants and/or bars in the City. In December 2006, respondents filed a declaratory judgment action contending the Ordinance was invalid and seeking injunctive relief. The trial court denied respondents' requests for a temporary restraining order and a preliminary injunction. The Ordinance went into effect at noon on January 1, 2007. On March 8, 2007, however, the trial court issued an order declaring the Ordinance was both unconstitutional and preempted by State law. Consequently, the trial court permanently enjoined the City from enforcing the Ordinance.

## ISSUE

Did the trial court err in ruling that the Ordinance is preempted by State law and violates the South Carolina Constitution?

## DISCUSSION

█ The City argues the Ordinance is not preempted by State law and is consistent with both the Constitution and the general law of the State. We agree.

A two-step process is used to determine whether a local ordinance is valid. *Denene, Inc. v. City of Charleston,* 352 S.C. 208, 212, 574 S.E.2d 196, 198 (2002); *Bugsy's v. City of Myrtle Beach,* 340 S.C. 87, 93, 530 S.E.2d 890, 893 (2000). First, the Court must consider whether the municipality had the power to enact the ordinance. If the State has preempted a particular area of legislation, a municipality lacks power to regulate the field, and the ordinance is invalid. *Id.* If, however, the municipality had the power to enact the ordinance, the Court must then determine whether the ordinance is consistent with the Constitution and the general law of the State. *Id.*

To preempt an entire field, "an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way." *Bugsy's,* 340 S.C. at 94, 530 S.E.2d at 893 (citing *Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. 550, 397 S.E.2d 662 (1990)). Furthermore, "for there to be a conflict between a state statute and a municipal ordinance 'both must contain either express or implied conditions which are inconsistent or irreconcilable with each other.... If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand.' " *Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. at 553, 397 S.E.2d at 664 (quoting *McAbee v. Southern Rwy., Co.,* 166 S.C. 166, 169–70, 164 S.E. 444, 445 (1932)).

In the instant case, the trial court found that a 1996 legislative act—Act 445—expressly preempts the Ordinance. We find no preemption.

Act 445 accomplished two **separate** objectives: (1) it amended section 44–95–20 of the Clean Indoor Air Act;[2] and (2) it amended and added statutes related to the distribution of tobacco products to minors. *See* S.C.Code Ann. §§ 16–17–500 thru 16–17–504 (2003).

Section 16–17–500 is a criminal statute which makes it a misdemeanor for anyone to sell or give a tobacco product to a

---

**2.** According to the title of Act 445, the amendment to the Clean Indoor Air Act was "to revise the areas in which a person may smoke in public schools and provide that local school boards may make school district facilities smoke free."

minor. Section 3 of Act 445 amended this section by revising the penalties for the offense. Section 2 of Act 445 added sections 16–17–501, 16–17–502, 16–17–503, and 16–17–504 to the Code. Section 16–17–501 provides definitions relating to the distribution of tobacco products; section 16–17–502 makes it unlawful to distribute a tobacco sample to a minor; and section 16–17–503. provides for enforcement and federal reporting.

Section 16–17–504, entitled "Implementation; local laws," provides as follows:

> (A) Sections 16–17–500, 16–17–502, and 16–17–503 must be implemented in an equitable and uniform manner throughout the State and enforced to ensure the eligibility for and receipt of federal funds or grants the State receives or may receive relating to the sections. **Any laws, ordinances, or rules enacted pertaining to tobacco products may not supersede state law or regulation.** Nothing herein shall affect the right of any person having ownership or otherwise controlling private property to allow or prohibit the use of tobacco products on such property.
>
> (B) Smoking ordinances in effect before the effective date of this act are exempt from the requirements of subsection (A).

§ 16–17–504 (emphasis added).

The trial court found that the second sentence of section 16–17–504(A) (emphasized above) applies not only to the statutory sections regarding the furnishing of tobacco to minors, but also applies to the Clean Indoor Air Act. The trial court therefore determined that this portion of section 16–17–504(A) expressly preempts local ordinances such as the Ordinance passed by the City in 2006. The trial court concluded that by "including the second sentence in section 16–17–504(A), the General Assembly intended to prohibit local government from imposing any restriction on indoor smoking beyond the restrictions contained in the Clean Indoor Air Act."

The City contends that the sections of Act 445 dealing with the distribution of tobacco products to minors were intended to address prerequisites set by the federal government in order to be eligible for certain grant funds. *See, e.g.,* § 16–17–503 (specifically referencing compliance with the federal

Public Health Service Act, 42 U.S.C. § 300x–26). Because of the limited focus and purpose of these statutes, the City argues the trial court erred by essentially exporting a portion of section 16–17–504 over to the Clean Indoor Air Act. We agree with the City.

The primary rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *E.g., Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). When construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect. *Denene,* 352 S.C. at 212, 574 S.E.2d at 198; *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 503 S.E.2d 471 (1998). Moreover, "[a] statute should not be construed by concentrating on an isolated phrase." *South Carolina State Ports Auth. v. Jasper County,* 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006). Finally, the Court must presume the Legislature did not intend a futile act, but rather intended its statutes to accomplish something. *Denene, supra.*

We find the trial court erred when it isolated a phrase from section 16–17–504 and interpreted it in such a way as to accomplish preemption under the Clean Indoor Air Act. *See South Carolina State Ports Auth., supra* (statute should not be construed by concentrating on an isolated phrase). While sections which are part of the same general statutory law must be construed together and each one given effect, *see Denene, supra,* this is easily accomplished by looking at the plain language in section 16–17–504 and applying it only to sections 16–17–500, 16–17–502, and 16–17–503. To apply section 16–17–504 more broadly than that would effectively change the meaning of an unambiguous statute, which we refuse to do. *See Hodges v. Rainey,* 341 S.C. at 85, 533 S.E.2d at 581 ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute.").

In other words, it is patent that the language regarding "ordinances" found in section 16–17–504 is intended to relate specifically to the distribution of "tobacco products" to minors, and not to the regulation of indoor smoking. *Hodges v.*

*Rainey, supra* (the cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature). Merely because section 16–17–504 was added to the Code in the same piece of legislation which amended the Clean Indoor Air Act does not require that this section's language about local laws be interpreted as part of the Clean Indoor Air Act.

Accordingly, the trial court erred in deciding that Act 445 expressly preempts the Ordinance.

■ Moreover, we note the Clean Indoor Air Act did not preempt the entire field of indoor smoking. There simply is no **expressly** stated intent in the statute that the State chose to exclusively regulate the subject of indoor smoking. *See Bugsy's*, 340 S.C. at 94, 530 S.E.2d at 893 (to accomplish field preemption, "an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way").[3]

Because Act 445 and the Clean Indoor Air Act itself do not preempt the City from legislating in this area, we find the City had the power to enact the Ordinance. Thus, the Ordinance survives step one of the analysis. *See Denene, supra; Bugsy's, supra.* Next, under step two, we must determine whether the Ordinance is consistent with the Constitution and the general law of the State. *Id.*

■ The trial court found the Ordinance violated Article VIII, section 14 of the South Carolina Constitution. Specifically, the trial court stated that because a violation of the Clean Indoor Air Act constitutes a misdemeanor punishable by a fine, and the Ordinance provides for a fine for smoking in

---

3. We are aware that several opinions of the Attorney General have come to a different conclusion, and respondents urge us to adopt the Attorney General's view of this issue. *See* Op. S.C. Att'y Gen., 2007 WL 1651346 (May 1, 2007); Op. S.C. Att'y Gen., 2006 WL 269614 (Jan. 26, 2006); 1990 Op. S.C. Att'y Gen. 196 (1990). The 1990 opinion reviewed whether the Clean Indoor Air Act preempted localities from further regulating smoking and found that "local political subdivisions would be prohibited, **at least implicitly,** from further regulation of smoking in public indoor places." (emphasis added). Under this Court's law, however, preemption must be explicit, not implicit. *Bugsy's, supra.* Furthermore, we note this Court is not bound by opinions of the Attorney General. *Eargle v. Horry County*, 344 S.C. 449, 455, 545 S.E.2d 276, 280 (2001).

areas not prohibited by the State law, the City unconstitution-
ally "criminalized conduct that is not illegal under State
criminal laws governing the same subject." Because we find
the Ordinance does not criminalize conduct, we hold it does
not run afoul of Article VIII, section 14 of the Constitution.

Although Article VIII deals generally with the creation of
local government, Article VIII, section 14 limits certain pow-
ers of local governments. *See City of North Charleston v.
Harper,* 306 S.C. 153, 155–56, 410 S.E.2d 569, 570 (1991).
Section 14 provides, in pertinent part: "In enacting provisions
required or authorized by this article, general law provisions
applicable to the following matters shall not be set aside: ...
(5) criminal laws and the penalties and sanctions for the
transgression thereof." S.C. Const., art. VIII, § 14.

We have observed that this subsection of the Constitution
requires "statewide uniformity" regarding the criminal law of
this State, and therefore, "local governments may not **crimi-
nalize** conduct that is legal under a statewide criminal law."
*Martin v. Condon,* 324 S.C. 183, 478 S.E.2d 272, 274 (1996)
(emphasis added); *accord Connor v. Town of Hilton Head
Island,* 314 S.C. 251, 442 S.E.2d 608 (1994) (where the Court
held that a municipality cannot criminalize nude dancing when
State law does not).

While the Ordinance in this case does make smoking in
certain areas "unlawful" where the Clean Indoor Air Act does
not, it is our opinion the Ordinance does not criminalize such
behavior. Instead, the Ordinance states that a violation con-
stitutes "an infraction." "Infraction" is defined as:

A breach, violation, or infringement; as of a law, a contract,
a right or a duty. A violation of a statute for which the only
sentence authorized is a fine and which violation is expressly
designated as an infraction.

*Black's Law Dictionary* 537 (6th ed.1992).

Put simply, the plain language of the Ordinance is non-
criminal in nature. This contrasts with the Clean Indoor Air
Act's "misdemeanor" language which clearly indicates that a
violation of the State law is considered a criminal offense.

Citing *Connor v. Town of Hilton Head Island, supra,*
respondents argue this Court has held that a local ordinance

cannot make an activity illegal when it is otherwise legal under State law. They contend that based on this holding, the Ordinance must be struck down. In *Connor*, we stated that Article VIII, section 14 "prohibit[s] a municipality from proscribing conduct that is not unlawful under State criminal laws governing the same subject." 314 S.C. at 254, 442 S.E.2d at 609. It was clear, however, that the local ordinance at issue in *Connor*, which prohibited nude or semi-nude dancing, criminalized such conduct. In support of our holding, we stated as follows: "Since Town has **criminalized** conduct that is not unlawful under relevant State law, we conclude Town exceeded its power in enacting the ordinance in question." *Id.* at 254, 442 S.E.2d at 610.

In the instant case, however, where the violation of the Ordinance constitutes an infraction or a public nuisance, the conclusion is inescapable that the City does not seek to criminalize any conduct. As such, the Ordinance does not "set aside" the criminal laws of this State. Accordingly, we find trial court erred in finding that the Ordinance violates Article VIII, section 14 of the South Carolina Constitution.

■■■ Finally, we hold the Ordinance is consistent with the Constitution and the general law of the State.

■■■■ South Carolina law provides that each municipality of this State may enact:

> regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State, including the exercise of powers in relation to roads, streets, markets, law enforcement, health, and order in the municipality or respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality or for preserving health, peace, order, and good government in it."

S.C.Code Ann. § 5-7-30 (2004). Under the State Constitution, "all laws concerning local government shall be liberally construed in their favor." S.C. Const. art. VIII, § 17. "A municipal ordinance is a legislative enactment and is presumed to be constitutional." *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 425, 593 S.E.2d 462, 467 (2004). Furthermore, "[a]s a general rule, 'additional regulation to that of

State law does not constitute a conflict therewith.' " *Denene,* 352 S.C. at 214, 574 S.E.2d at 199 (citation omitted).

The City claims that the Ordinance is a proper exercise of municipal power because it seeks to protect citizens from second-hand smoke. *See* § 5–7–30 (municipality may enact ordinance which promotes general welfare and preserves health). We agree.

In *Denene,* this Court found that a local ordinance which prohibited commercial establishments that allow alcohol consumption from operating between the hours of 2 a.m. and 6 a.m. on Mondays through Saturdays did **not** conflict with State law which prohibited the sale of alcohol between twelve o'clock Saturday night and sunrise Monday morning. The *Denene* Court held that because the local ordinance was "neither inconsistent nor irreconcilable" with the State statute, it was a proper and valid exercise of the city's police power. *Denene,* 352 S.C. at 215, 574 S.E.2d at 199.

The situation in the instant case is akin to that in *Denene.* While the State has legislated restrictions on smoking in certain areas, a civil ordinance which adds areas does not in any way conflict with the State law. "Mere differences in detail do not render [statutes] conflicting. If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand." *Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. at 553, 397 S.E.2d at 664 (internal quotes and citation omitted).

Thus, it is our opinion that the Ordinance is consistent with the Constitution and the general law of the State.

## CONCLUSION

For the reasons discussed above, we hold the Ordinance passed by the City is valid and enforceable. Therefore, we reverse the trial court's order.

**REVERSED.**

TOAL, C.J., MOORE, PLEICONES and BEATTY, JJ., concur.