492 So.2d 665 (1986)
STATE of Alabama
v.
Bobby D. CLAYTON.
6 Div. 927.
Court of Criminal Appeals of Alabama.
June 24, 1986.
W. Holcomb Kerns, Jr., Asst. Atty. Gen., for appellant.
Ralph L. Armstrong, Bessemer, for appellee.
BOWEN, Presiding Judge.
This is an appeal by the State from an order of the District Court of Jefferson County, Bessemer Division, holding a portion of Alabama's Solid Wastes Disposal Act unconstitutional.
The charges were brought against the defendant by the filing of an affidavit and complaint. The individual filing the charge is identified in the State's brief, but not in the record, as "an Environmentalist with the Jefferson County Department of Health." Appellant's Brief at 2.
*666 The defendant pled not guilty. The district court "after hearing the evidence [found] the statute ... to be vague, ambiguous, and unenforceable." Notice of appeal was filed by an assistant attorney general, pursuant to § 12-22-91, Code of Alabama 1975, which provides: "In all criminal cases when the act of the legislature under which the indictment or information is preferred is held to be unconstitutional, the district attorney may take an appeal in behalf of the State to the supreme court...."
The complaint in this case charged, in pertinent part, that the defendant "did cause the formation of an unauthorized dump on property owned by the said Bobby D. Clayton, ... in Jefferson in violation of Title 22-27-4(b), Code of Alabama 1975."
Section 22-27-4(b) states the following:
"The formation of unauthorized dumps is hereby declared to be a public nusiance per se, a menace to public health, and a violation of this article...."
Section 22-27-2(6) defines "unauthorized dump" as follows:
"Any collection of solid wastes either dumped or caused to be dumped or placed on any property either public or private, whether or not regularly used, and not under the control and supervision of any person or agency. An abandoned automobile, large appliance or similar large item of solid waste shall be considered as forming an unauthorized dump within the meaning of this article, but not the careless littering of smaller individual items as tires, bottles, cans and the like. An unauthorized dump shall also mean any solid waste disposal site which does not meet the regulatory provisions of this article."
The trial court found the statute under which the defendant was charged to be "vague, ambiguous, and unenforceable."
The concept of vagueness derives from the due process clause of the Fourteenth Amendment, Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed.2d 888 (1939), and is the basis for invalidating legislation which does not give adequate warning of what conduct is unlawful, United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). The right to due process is also guaranteed under Article I, §§ 6 and 13 of the Alabama Constitution of 1901.
In Kahalley v. State, 254 Ala. 482, 48 So.2d 794 (1950), our Supreme Court held an Alabama misdemeanor statute unconstitutionally vague:
"[L]egislation may run afoul of the due process clause because of a failure to set up any sufficient guidance to those who would be law-abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law's enforcement." 254 Ala. at 483, 48 So.2d at 795.
In McCrary v. State, 429 So.2d 1121, (Ala.Cr.App.1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983), this court observed:
"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808 [811-12], 98 L.Ed. 989, 996 (1954). A vague statute does not give adequate `notice of the required conduct to one who would avoid its penalties,' Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (1951) [1952], is not `sufficiently focused to forewarn of both its reach and coverage,' United States v. National Dairy Products Corp., 372 U.S. [29] at 33, 83 S.Ct. [594] at 598, 9 L.Ed.2d [561] at 566 [(1963)], and `may trap the innocent by not providing fair warning,' Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972)." 429 So.2d at 1124.
The statute under review here is a health regulation, see Ala.Code § 22-27-4(b) ("a menace to public health") enacted under the state's police power, see Parke v. Bradley, 204 Ala. 455, 86 So. 28 (1920). Discussing the standard of appellate review *667 to be applied to legislation aimed at promoting the public health, the Alabama Supreme Court observed:
"The prevention of disease and the conservation of health ... is universally recognized as one of the most important and imperious duties of government, and in the construction of statutes enacted for such a purpose, under the police powers of the state, courts are agreed that great latitude should be allowed to the Legislature in determining the character of such laws, and how, when, and by whom, in their practical administration, they should be applied." Parke v. Bradley, 204 Ala. at 456, 86 So. at 29.
In reviewing the constitutionality of a health measure, the central issue is reasonableness, Ross Neely Express, Inc. v. Alabama Dep't of Environmental Management, 437 So.2d 82, 84 (Ala.1983).
"While it has been recognized that the preservation of the public health is one of the prime duties of the state or municipality, and thus the enactment or enforcement of necessary and reasonable health laws and regulations is a legitimate exercise of police power inherent in the state or municipality, when the validity of any health regulation is questioned the test adhered to by the courts is whether the regulation has some actual or reasonable relation to the maintenance and promotion of the public health, and whether health is in fact the end sought to be attained." State ex rel. Furman v. Searcy, 225 So.2d 430, 433 (Fla.Dist.Ct. App.1969.) (Emphasis in original.)
Applying the foregoing principles to the challenged statute, we find that § 22-27-2(6) defining an "unauthorized dump" is not unconstitutionally vague or ambiguous, and § 22-27-4(b) declaring an unauthorized dump to be a nuisance per se is not unenforceable. The statute has an "actual and reasonable relation to the maintenance and promotion of the public health," State ex rel. Furman v. Searcy, 225 So.2d at 433, because "the accumulation of garbage is a serious threat to the public health." Craig v. City of Macon, 543 S.W.2d 772, 774 (Mo.1976).
Section 22-27-2(6) gives fair notice that it is the uncontrolled and unsupervised dumping of solid wastes which is prohibited. The statute is focused so that its coverage extends only to the dumping of solid waste on property which is "not under the control and supervision of any person or agency." Ala.Code § 22-27-2(6). The solid waste disposal regulations are aimed at preventing "public nuisances, public health hazards, and the despoliation of the environment that necessarily accompany the accumulation and unmanaged disposal of garbage, refuse, and filth." Craig v. City of Macon, 543 S.W.2d at 773. (Emphasis added.) Reviewing a Missouri solid waste disposal enactment, the Missouri Supreme Court noted:
"Throughout human history this menace [unmanaged waste disposal] has led to and intensified disease and plague. The legislature, in its wisdom, has forbidden the dumping of solid waste ... except through licensed solid waste processing facilities, disposal areas, and other means that do not create public nuisances or adversely affect the public health." Craig, 543 S.W.2d at 773.
Beside being concerned only with the uncontrolled and unsupervised dumping of solid wastes, the coverage of the Alabama statute is also limited by the definition of "solid wastes" found in § 22-27-2(1), Code of Alabama 1975:
"(1) SOLID WASTES. All putrescible and nonputrescible discarded materials, except household sewage and livestock and poultry wastes, including, but not limited to, garbage, rubbish, ashes, street and highway cleanings, dead animals, including offal, abandoned automobiles and such industrial wastes as are not controlled by other agencies."
The reach of the statute is sufficiently limited by the legislature's enumeration of certain waste items which fall within and without the prohibition of the statute ("An abandoned automobile, large appliance, or similar large item of solid waste ... but *668 not the careless littering of smaller individual items as tires, bottles, cans and the like"). The fact that there may be some uncertainty about whether waste items which fall between the categories of abandoned cars or large appliances on the one hand, and smaller, carelessly-littered castoffs on the other, will not serve to invalidate the statute. "The uncertainty in a statute which will amount to a denial of due process of law is not the difficulty of ascertaining whether close cases fall within or without the prohibition of the statute but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved." Stull v. State, 230 Ga. 99, 196 S.E.2d 7 (1973). (Emphasis added.)
The standard established by § 22-27-2(6) is reasonably clear: large items which, of necessity, have been intentionally "dumped or caused to be dumped" in an unmanaged area constitute an unauthorized dump, while smaller items usually considered to be litter, or scattered castoffs, do not constitute an unauthorized dump. While there may be an intermediate category of waste which could be characterized as "mediumsized" and purposely deposited on unsupervised property, the legislature's failure to delineate that category does not make the statute standardless.
"[D]ifficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. Impossible standards of specificity are not required. The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." Jordan v. State, 411 So.2d 816, 818 (Ala.Cr.App.1981). (Citations omitted.)
See also Stull v. State, supra. Compare Ross Neely Express v. Alabama Dep't of Environmental Management, 437 So.2d at 85 (antipollution regulation requiring the taking of "reasonable precautions to prevent particulate matter from becoming airborne" establishes no clear standard); State v. Dousay, 378 So.2d 414, 418 (La.1979) (sanitation regulation requiring "all usual and all reasonable measures and precautions to secure ... the proper operation... of" sewage treatment systems does not provide adequate standards to determine guilt or innocence). But see Ferndale Heights Utilities Co. v. Illinois Pollution Control Board, 44 Ill.App.3d 962, 3 Ill.Dec. 539, 358 N.E.2d 1224 (1976) (noise control ordinance prohibiting "noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity" upheld as sufficiently precise).
Sections 22-27-2(6) and 22-27-4(b) are not unconstitutional. They are reasonable provisions enacted under the State's police power to promote public health which, when measured by common understanding and practice, establish sufficiently clear standards of conduct. The judgment of the district court holding the statute unconstitutional is reversed.
This cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.