PER CURIAM.
 

 Alabama Recycling Association, Inc., appeals from the trial court’s judgment in favor of the City of Montgomery (“the City”) in this action by Alabama Recycling seeking a judgment declaring the existence of a conflict between a statute and an ordinance adopted by the City and injunc-tive relief.
 

 Facts and Procedural History
 

 On June 14, 2007, the Governor approved Act No. 2007-451, Ala. Acts 2007, enacted by the Alabama Legislature to regulate secondary metals recycling and now codified at § 13A-8-30 et seq., Ala. Code 1975 (“the Act”). The Act applies to both ferrous metals (defined as those metal containing significant quantities of iron or steel, § 13A-8-30(l)) and nonferrous metals (defined as metals not containing significant amounts of iron or steel, such as copper, § 13A-8-30(2)). The Act places restrictions on secondary metals recyclers. A secondary metals recycler is defined as a person “who is engaged ... in the business of paying compensation for ferrous or nonferrous metals that have served their original economic purpose.” § 13A-8-30(8).
 

 The Act requires secondary metals recyclers to maintain records of “all purchase transactions to which the secondary metals recycler is a party.” § 13A-8-31(a). Those records are to include: (1) the name and address of the secondary metals recy-cler; (2) the date of the transaction, (3) the amount and a description of the type of metal purchased; (4) the amount paid for the metal; (5) a signed statement from the seller stating that he or she is the rightful owner of the metal or is entitled to sell the metal; (6) the name and address of the seller; (7) the number from some form of identification from the seller; and (8) the license tag number of the vehicle used to deliver the metal to the secondary metals recycler.
 

 Section 13A-8-31(b) provides as follows:
 

 “(b)(1) For three years following September 1, 2007 [the effective date of the Act], the secondary metal[s] recycler shall not enter into any cash transactions in excess of one hundred dollars ($100) for copper or in excess of one thousand dollars ($1,000) for all other metals in payment for the purchase
 
 of
 
 the metal property. The check shall be payable to the name and address of the
 
 *1087
 
 seller of the metal and mailed to the recorded address of the seller or picked up in person by the seller. At the end of three years, this subdivision shall be repealed and subdivision (2) shall apply.
 

 “(2) Commencing three years and one day following September 1, 2007, the secondary metalfs] recycler shall not enter into any cash transaction in excess of one thousand dollars ($1,000) for any metals in payment for the purchase of the metal property. Payment shall be made by check issued to the seller of the metal. The check shall be payable to the name and address of the seller or picked up in person by the seller [sic].”
 

 A law-enforcement official may issue a hold notice to a secondary metals recycler who the law-enforcement official reasonably believes is in possession of stolen metal property when the official has an affidavit from the rightful owner describing the stolen property. § 13A-8-33(a)(l). If the secondary metals recycler contests an allegedly rightful owner’s claim to the metal property, the rightful owner may file an action in the circuit court in the county in which the secondary metals recycler is located. § 13A-8-34(a). Certain classes of sellers are exempt from the Act. § 13A-8-35. The Act criminalizes giving false statements regarding ownership or a false or altered identification or vehicle tag number in connection with the sale of metal property. § 13A-8-36. A secondary metals recycler who knowingly and intentionally violates the Act is guilty of a misdemeanor, but if there is a pattern of such practices by the secondary metals recycler, then the recyeler is guilty of a Class C felony. § 13A-8-37(b). The Act provides that in cases where the acts prohibited by the Act also constitute violations of “any other provision of law,” then the provisions of law that carry the stricter penalty will be applied. § 13A-8-38. Section 13A-8-39 provides that the Act applies to all businesses regulated under the Act without regard to the location of the business within the State and that the Act shall take precedence over any and all local ordinances to the contrary.
 

 On January 15, 2008, the City enacted Ordinance No. 3-2008, which was to become effective February 7, 2008 (“the ordinance”). In enacting the ordinance, the City Council specifically found “that copper thefts and illegal trade in stolen copper have had and continue to have a significant detrimental impact on the citizens and economy of the City of Montgomery by way of both the increase in illegal activity in the community and the cost of damages to the victims of copper theft.” § 1. The ordinance was enacted “to supplement and compliment [sic] the state law regarding the theft and purchase of copper, and the record keeping and reporting requirements imposed upon purchasers of copper thereby.” § 2. The ordinance defines a metals recycler as any person or entity that enters into a transaction to purchase salvaged copper. The ordinance identifies “copper” as “the element listed in the periodic table bearing the atomic number 29 and classified as a metal,” and “salvaged copper,” under the ordinance, includes “copper tubing, copper wire — bare and insulated, all brasses and bronzes, copper solids, auto radiators, copper and aluminum radiators.”
 

 The ordinance provides, in pertinent part, that each metals recycler who purchases salvaged copper within the City shall be required to:
 

 “1) Hold all payments for purchases of Salvaged Copper for a minimum of twenty-four hours after the said purchase; payment to be picked up by seller or mailed to seller.
 

 “2) Pay for all purchases of Salvaged Copper by check made payable to the seller of copper;
 

 
 *1088
 
 “3) Capture and maintain by electronic means, a frontal, head and shoulders color photograph of the person from whom they purchase any quantity of Salvaged Copper in a form which is capable of transmission and delivery via computer to the person or entity designated by the Chief of Police of the Montgomery Police Department; said electronic photograph shall be maintained by the Metals Recycler for a period of at least one year from the date of the purchase of the Salvaged Copper and in the same manner which those records required to be kept by Ordinance 45-2006; said photograph and records shall viewable by any law enforcement officer upon request and shall be provided to the Chiefs designee by electronic means by request thereof.”
 

 On January 31, 2008, Alabama Recycling, an incorporated association composed of businesses in the City engaged in the purchase of ferrous and nonferrous metals, sued the City, seeking a judgment declaring that the ordinance conflicts with the Act. Alabama Recycling also sought relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction, to prohibit the ordinance from taking effect on February 7, 2008. On February 4, 2008, the trial court held a hearing, following which it refused to enter a temporary restraining order. On February 6, 2008, Alabama Recycling filed a motion to stay the enforcement of the ordinance to the extent it conflicts with the Act; it also filed a notice of appeal from the denial of its request for a temporary restraining order. On February 8, 2008, the trial court entered an order stating that, “having considered complaint for Declaratory an Injunctive Relief, and after hearing testimony, the submission of documents, and argument of counsel, and for cause shown it is hereby ordered that [Alabama Recycling’s] relief sought is denied.” The trial court granted the motion to stay. On February 22, 2008, the City filed a motion to alter, amend, or vacate the order staying the enforcement of the ordinance. This Court remanded the case to the trial court for the sole purpose of considering the City’s motion to alter, amend, or vacate. On February 26, 2008, the trial court denied the City’s motion. On February 29, 2008, Alabama Recycling filed a motion to reinstate its appeal, which this Court granted.
 

 Standard of Review
 

 The question presented on appeal involves a pure question of law; thus, our review is de novo. See
 
 Barber v. Jefferson County Racing Ass’n,
 
 960 So.2d 599 (Ala.2006) (holding that review of a declaratory judgment is ordinarily governed by the ore tenus standard, but when the facts are undisputed or uncontroverted and the questions presented are purely legal ones, the review is de novo).
 

 Discussion
 

 Alabama Recycling argues that the Act and the ordinance are inconsistent. “ ‘ “Whether an ordinance is inconsistent with the general law of the State is to be determined by whether the municipal law prohibits anything which the State law specifically permits.” ’ ”
 
 Gibson v. City of Alexander City,
 
 779 So.2d 1153, 1155 (Ala.2000) (quoting
 
 Lanier v. City of Newton,
 
 518 So.2d 40, 43 (Ala.1987), quoting in turn
 
 Congo v. State,
 
 409 So.2d 475, 478 (Ala.Crim.App.1981)). In
 
 Lanier v. City of Newton,
 
 this Court addressed “inconsistency” with regard to a conflict between a statute and an ordinance, stating: “ ‘Inconsistent’ is defined by Black’s Law Dictionary (5th ed.1979) as ‘mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one
 
 *1089
 
 implies the abrogation or abandonment of the other.’ It implies ‘contradiction — qualities which cannot coexist — not merely a lack of uniformity in details.’
 
 City of Montgomery v. Barefield,
 
 1 Ala.App. 515, 523, 56 So. 260, 262 (1911).” 518 So.2d at 43.
 

 In
 
 Gibson, supra,
 
 a café owner brought an action challenging the city’s authority to adopt an ordinance restricting the sale of alcoholic beverages between midnight and 7 a.m., where the café owner had a license issued under the statutory provisions of the Alcoholic Beverage Licensing Code that allowed him to sell liquor 24 hours a day, 6 days a week. This Court held that the City’s ordinance merely enlarged upon the statutory provisions of the Alcoholic Beverage Licensing Code and that it was not inconsistent with Alabama statutory law.
 

 In
 
 City of Montgomery v. Barefield,
 
 1 Ala.App. 515, 56 So. 260 (1911), the court examined an alleged conflict between a city ordinance and statutes regarding work on public roads, which provided that all residents of a municipality over the age of 45 were exempt from road duty and that the inhabitants of a municipality were exempt from working on the roads outside the municipality but could be required to pay a street tax for maintenance and construction of the streets within the municipality. The city passed an ordinance that imposed an annual street tax on all residents between the ages of 21 and 45 and required those failing to pay the annual street tax to work the roads in the city. The appellate court held that the ordinance and the statutes were not in conflict, stating:
 

 “The ordinance in question strikes down the provisions of no general law, is not repugnant to it, does not infringe its spirit, and is not in contravention of or in conflict with the operation or enforcement of the general law relating to the performance of road duty. The laws are not contradictory of nor repugnant to each other; they may both coexist and be enforced at the same time, without dependence one upon the other. Each has a separate field of operation in which it may be enforced. The city law specifies no particular persons as exempt, and makes a somewhat different class liable to the payment of street tax than are liable to the performance of road duty under the provisions of the law requiring persons to work the roads, but the constitutional requirement is not for
 
 conformity
 
 in the laws; it is that they shall not be
 
 inconsistent,
 
 and inconsistent implies contradiction — qualities which cannot coexist — not merely a lack of uniformity in details.”
 

 1 Ala.App. at 523, 56 So. at 263. In
 
 City of Mobile v. Collins,
 
 24 Ala.App. 41, 130 So. 369 (1930), the appellate court held that a city ordinance levying a street tax on men between the ages of 21 and 60 was not inconsistent with the same statutes at issue in
 
 Barefield.
 

 In
 
 Congo v. State, supra,
 
 a criminal defendant argued that a municipal ordinance charging the offense with which he was charged — drunkenness on any street or other public place — was in conflict with a State statute providing that a person commits the crime of public intoxication if he appears in public under the influence to the degree that he endangers himself or another or his boisterous or offensive conduct annoys another person. Specifically, the defendant contended that the city ordinance was in conflict with the statute, and was therefore unconstitutional, because, he argued, the city ordinance prohibited merely being in a state of drunkenness whereas the statute required some manifestation of endangering or annoying conduct in addition to the intoxication. The
 
 *1090
 
 Court of Criminal Appeals held that the city ordinance did not contravene a State statute and that it did not prohibit something the State statute affirmatively allowed.
 

 In the present case, Alabama Recycling contends that the ordinance and the Act are in conflict because the Act permits cash purchases of copper for up to $100 and up to $1,000 for other metals and the ordinance prohibits any cash transactions for copper. The Act prohibits a metals recycler from purchasing copper with cash if the transaction is over $100, while the ordinance expands the cash prohibition to
 
 all
 
 transactions for the purchase of copper. The Act does not “specifically permit” cash purchases of copper at or below $100 in value. It simply does not regulate such purchases. The fact that the Act does not regulate purchases of $100 or less does not create a conflict with the ordinance, which does regulate such purchases. In other words, the Act does not prohibit payment by check for purchases of copper under $100. This portion of the ordinance does not conflict with the statute because the ordinance enlarges upon the provisions of the Act by adding certain restrictions.
 

 Alabama Recycling also argues that a conflict exists because the Act allows for the immediate delivery of a check to the seller in a non-cash transaction and the ordinance requires that a check issued to the seller be withheld for 24 hours. The ordinance requires a metals recycler to hold a check paid for the purchase of copper for 24 hours, whereas the Act does not require a recycler to hold payment for any period. In adopting the Act, the legislature did not prohibit or permit a metals recycler
 
 from
 
 holding a check. The ordinance thus does not prohibit anything the Act expressly permits or permit anything the Act expressly prohibits. The Act is silent on this issue. Mere differences in detail do not create a conflict, and we cannot say a conflict exists merely because the Act is silent where the ordinance speaks.
 

 Alabama Recycling argues that there is a conflict between the Act and the ordinance because the Act exempts from regulation metals that have
 
 not
 
 served their original economic purpose (i.e., new copper and other metals) whereas the ordinance regulates purchases of all copper, new or used. The ordinance defines the term “salvaged copper” and lists several items that are made of copper. The term “salvaged,” however, is not defined in the ordinance. Assuming, without deciding, that
 
 “salvaged
 
 copper” is copper that has served its original economic purpose, there would be no conflict between the ordinance and the Act. Even if we assume that the ordinance applies to both new and salvaged copper, the ordinance does not conflict with the Act because the phrase “metals that have served their original economic purpose” is part of the definition of “secondary metals recycler” and references to whom the provisions of the Act apply and not the definition of nonferrous metals. The definition of nonferrous metals in the Act is any metal not containing significant amounts of iron or steel, and copper is specifically set out as one of those metals,
 

 Alabama Recycling does cite several cases in which Alabama appellate courts have found a conflict between a city ordinance and a statute. However, those cases involved ordinances that prohibited conduct that the State statute expressly allowed. See
 
 Riverbend P’ship v. City of Mobile,
 
 457 So.2d 371 (Ala.1984) (holding that there was a conflict between the city ordinance and a State statute where the city ordinance denied the Board of Adjustment the power to grant variances to zoning laws and the State statute expressly
 
 *1091
 
 provided for such power in the enabling legislation);
 
 Alabama Disposal Solutions-Landfill, LLC v. Town of Lowndesboro,
 
 837 So.2d 292 (Ala.Civ.App.2002) (holding that a municipal ordinance prohibiting landfills within the city’s corporate limits and its police jurisdiction conflicted with a State statute to the extent that the city’s ordinance purported to regulate a solid-waste landfill outside the city’s corporate limits); and
 
 Atkins v. City of Tarrant City,
 
 369 So.2d 322 (Ala.Crim.App.1979) (holding that city ordinance that made it illegal to be intoxicated while riding as a passenger in an automobile conflicted with State statute exempting from criminal liability for intoxication while traveling along a public highway persons traveling as a passenger in any public or private conveyance).
 

 Lastly, Alabama Recycling argues that the Act was intended to “limit the requirements for all cases to its own terms” because § 13A-8-39 states that the Act applies statewide and that it “shall take precedence over any and all local ordinances to the contrary.” Had the legislature intended to occupy the entire field of regulating the sale of used metals, the legislature could have easily stated that the Act was to be exclusive. See, e.g., § 2-17-25, Ala.Code 1975 (establishing the jurisdiction of the agricultural commissioner as “exclusive” and providing that “no county or municipal board of health or other municipal agency shall have the power or jurisdiction to regulate the slaughtering” of certain animals). Instead, the legislature recognized that there could be existing or future city ordinances regarding metals recycling that would not be contrary to the Act. Also, § 13A-8-38 recognizes the coexistence of other criminal laws regulating the conduct addressed by the Act and recognizes that the Act was not intended to repeal those criminal laws and that, as between the two provisions, the harsher penalty would prevail.
 

 Accordingly, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.