MAIN, Judge.
 

 Jennifer Leigh Gann appeals her conviction of violating a Gulf Shores city ordinance that prohibits smoking in enclosed public places. She filed a motion to dismiss the charge in the Gulf Shores Municipal Court, wherein she alleged that the
 
 *245
 
 ordinance was unconstitutional. Her motion was denied and she was convicted. She appealed to the Baldwin Circuit Court for a trial de novo. Gann filed a pretrial motion in the circuit court to dismiss the charge, repeating her claim that the ordinance was unconstitutional. The City of Gulf Shores filed its response.
 
 [1]
 
 Her motion was denied, and a bench trial was set. Gann and the prosecutor for the City of Gulf Shores entered into a joint stipulation agreement as to the following facts: the ordinance in question is Ordinance no. 1478; Gann was “smoking” as the ordinance describes the term; Gann was smoking in a public place as defined by the ordinance; and Gann was smoking in After Hours, “a ‘bar’ as defined in Section no. 3 of Ordinance no. 1478. Said definition is essentially the same as the definition of ‘bar or lounge’ in Code of Alabama [§ ] 22-15A-3.” (C. 120.) After this stipulation was presented to the circuit court, Gann’s motion for a judgment of acquittal was denied and she was found guilty. Gann was fined $50 and ordered to pay court costs. Gann appealed.
 

 Gann argues that Ordinance no. 1478 is unconstitutional on its face because, she says, it allows the City of Gulf Shores to exceed its police powers under the laws regarding public nuisance. Moreover, Gann argues that the ordinance conflicts with the Alabama laws set out in the “Alabama Clean Indoor Air Act,” § 22-15A-1 et seq., Ala.Code 1975. She also submits that the Alabama Clean Indoor Air Act violates § 89, Ala. Const.1901.
 

 Specifically, Gann alleges that this ordinance was not designed to protect the public health but rather to allow the City of Gulf Shores to use its police power to “bully” citizens (Gann’s reply brief, at 9), by using “ ‘junk science’ to draw far reaching conclusions” concerning the risks of exposing nonsmokers to smoking in certain specified situations. (Gann’s brief, at 10.) Gann further argues that Ordinance no. 1478 attempts to expand the ban against public nuisances to abrogate private-property rights by including all privately owned property in the City of Gulf Shores other than those public places that are specifically exempted from the ordinance.
 
 [2]
 
 She argues that this attempt to govern a citizen’s rightful use of her private property is an unconstitutional usurpation of power, in violation of §§ 2, 35, and 36, Ala. Const.1901. Finally, Gann alleges that the ordinance conflicts with the general law in the State of Alabama in that the Alabama Clean Indoor Air Act was passed to address the issue of secondhand smoke and specifically exempts from its provisions bars and lounges, hotel and motel rooms that are not designated as nonsmoking, limousines under private hire, and retail tobacco stores. Thus, she argues, the or
 
 *246
 
 dinance conflicts with the Clean Indoor Air Act.
 

 Here, because the parties stipulated to the facts, only questions as to the application of the law remained for the trial court’s determination, and only questions concerning the application of the law to the stipulated facts are presented to this Court. “Questions of law are reviewed de novo.”
 
 Alabama Republican Party v. McGinley,
 
 893 So.2d 337, 342 (Ala.2004). The standard of review in a case involving the health, safety and welfare of its citizens, as is the stated purpose of Ordinance no. 1478 (C. 121), was addressed in
 
 State v. Clayton,
 
 492 So.2d 665 (Ala.Crim.App. 1986), which reviewed a health-regulation statute enacted under the State’s police power. This Court stated:
 

 “ ‘The prevention of disease and conservation of health ... is universally recognized as one of the most important and imperious duties of government, and in the construction of statutes enacted for such a purpose, under the police powers of the state, courts are agreed that great latitude should be allowed to the Legislature in determining the character of such laws, and how, when, and by whom, in their practical administration, they should be applied.’
 
 Parke v. Bradley,
 
 204 Ala. at 456, 86 So. at 29.
 

 “In reviewing the constitutionality of a health measure, the central issue is reasonableness,
 
 Ross Neely Express, Inc. v. Alabama Dep’t of Environmental Management,
 
 437 So.2d 82, 84 (Ala.1983).
 

 “ ‘While it has been recognized that the preservation of the public health is one of the prime duties of the state or municipality, and thus the enactment or enforcement of
 
 necessary
 
 and reasonable health laws and regulations is a legitimate exercise of police power inherent in the state or municipality, when the validity of any health i-egulation is questioned the test adhered to by the courts is whether the regulation has some actual or reasonable relation to the maintenance and promotion of the public health, and whether health is in fact the end sought to be attained.’
 
 State ex rel. Furman v. Searcy,
 
 225 So.2d 430, 433 (Fla.Dist.Ct.App.1969.) (Emphasis in original.)”
 

 492 So.2d at 667. See also
 
 Beard v. State,
 
 627 So.2d 1122, 1127 (Ala.Crim.App.1993) (affirming the principle that a constitutional limitation on the regulation of private property in the interest of public health “comes down to a question of ‘reasonability’ ” and, if an individual’s rights run afoul of the exercise of this power to regulate, “ ‘the right of the individual must yield’ ”).
 

 “Furthermore,
 
 when
 
 this Court construes a statute that is intended to protect the public health, ‘ “great latitude should be allowed to the Legislature in determining the character of such laws, and how, when, and by whom, in their practical administration, they should be applied.” ’
 
 State v. Clayton,
 
 492 So.2d 665, 667 (Ala.Cr.App.1986), quoting
 
 Parke v. Bradley,
 
 204 Ala. 455, 456, 86 So. 28 (1920). Because one of the purposes of the Act is to protect the public health, the legislature, in selecting a method to guide the counties in policing this public interest, will be accorded great latitude by this Court.”
 

 Ex parte Lauderdale County,
 
 565 So.2d 623, 627 (Ala.Civ.App.1990).
 

 Gann is not entitled to any relief on her first argument, i.e., that the City of Gulf Shores improperly exercised its police power in enacting Ordinance no. 1478 under a false guise of a health regulation, when the real purpose was to abrogate private property, stretching public nuisance beyond its intended goal. Gann was
 
 *247
 
 only an employee of the After Hours bar and never claimed or proved that she had any ownership rights in the properiy on which the bar was located.
 
 [3]
 
 Thus, she does not have standing to raise the argument that the ordinance’s interference with the property rights associated with this establishment.
 

 In its response to Gann’s pretrial motion to dismiss, the City of Gulf Shores argued that she lacked standing to raise any of her claims of the unconstitutional use of the police power and the extension of the doctrine of public nuisance by the City of Gulf Shores through this ordinance. The prosecutor for the City of Gulf Shores stated in its response:
 

 “3. [Gann] lacks standing to assert, therefore this Court lacks subject matter jurisdiction to hear, [Gann’s] claims in Section One of her Motion to Dismiss. [Gann] argues that ‘the property right of a proprietor to operate his business and regulate the use of his property under the principles of self government is simply negated; sacrificed not to prevent a conflict of the rights of others, but supposedly to promote a remote and highly problematic risk of some future evil.’ ([Gann’s] Brief at 1, emphasis added).
 

 “4. [Gann] has neither alleged nor established that she is the owner of After Horn's, Inc., the property on which After Hours, Inc. sits, or the building in which After Horn's, Inc. operates; therefore [Gann] lacks standing to assert any claims on behalf of the proprietor.”
 

 (C. 28.) Included in the caselaw cited by the prosecutor in support of this argument is the following quote from
 
 Town of Cedar Bluff v. Citizens Caring for Children,
 
 904 So.2d 1253 (Ala.2004):
 

 “ ‘To say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.’
 
 Doremus v. Business Council of Alabama Workers’ Comp. Self-Insurers Fund,
 
 686 So.2d 252, 253 (Ala.1996). ‘Standing ... turns on “whether the party has been injured in fact and whether the injury is to a legally protected right.” ’
 
 [State v. Property at
 
 ]
 
 2018 Rainbow Drive,
 
 740 So.2d [1025,] 1027 [ (Ala.1999) ] (quoting
 
 Romer v. Board of County Comm’rs of the County of Pueblo,
 
 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting))(emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See
 
 City of Daphne v. City of Spanish Fort,
 
 853 So.2d 933, 942 (Ala.2003) (‘The power of the judiciary ... is “the power to declare finally the rights of the parties, in a particular case or controversy (quoting
 
 Ex parte Jenkins,
 
 723 So.2d 649, 656 (Ala.1998)));
 
 Allen v. Wright,
 
 468 U.S. 737, 752 (1984) (‘[T]he law of Art. III standing is built on a single basic idea — the idea of separation of powers.’).
 

 “In
 
 Jones v. Black,
 
 48 Ala. 540 (1872), this court first articulated a test for determining whether a party has the necessary standing to challenge the constitutionality of an act of the Legislature. We stated then:
 

 
 *248
 
 “ ‘A party who seeks to have an act of the legislature declared unconstitutional, must not only show that he is injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown.’
 

 “48 Ala. at 543. In
 
 Alabama Alcoholic Beverage Control Board v. Henri-Duval Winery, LLC,
 
 890 So.2d 70, 74 (Ala.2003), a party challenged the constitutionality of Alabama’s Native Farm Winery Act, § 28-6-1 et seq., Ala.Code 1975. In that case, this court effectively restated the standard articulated in
 
 Jones,
 
 using language adopted from the Supreme Coui’t of the United States:
 

 “ A party establishes standing to bring a challenge [on constitutional gi'ounds] when it demonstrates the existence of (1)
 
 an actual, concrete and particularized “injury in fact’’
 
 — “an invasion of a legally protected intei’-est”; (2) a “causal connection between the injury and the conduct complained of’; and (3) a likelihood that the injury will be “redressed by a favorable decision.”
 
 Lujan v. Defenders of Wildlife,
 
 504 U.S. 555, 560-61 (1992).’ ”
 

 Town of Cedar Bluff,
 
 904 So.2d at 1256-57 (footnote omitted). See also
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1028 (Ala.1999) (holding that, if the party who commences the action does not have standing, then the trial court acquires no subject-matter jurisdiction).
 

 Because there is no indication in the l-ecord or any allegation by Gann that she had any property interest in After Hours, Inc., the entity that owns and opei’ates the After Hours bar, or to refute the City of Gulf Shores’ argument that she lacks standing, she is not entitled to any relief on this claim.
 

 Gann also argues that Ordinance no. 1478 is unconstitutional because, she says, it conflicts with state law, specifically the Alabama Clean Indoor Air Act. § 22-15A-1 et seq., Ala.Code 1975. She argues that because the Alabama Clean Indoor Air Act specifically exempts bars and lounges from the pi’ohibition in that act against smoking in a public place, it should override the provisions of the ordinance, because the Act established “ ‘a positive right’ which cannot be negated by the City’s Ordinance.” (C. 11.) She also argues that the Clean Indoor Air Act violates § 89, Ala. Const.1901, to the extent that the Act authorizes cities to prohibit smoking in bars and lounges. Section 89 provides: “ ‘The legislator shall not have power to authorize any municipal corporation to pass any laws inconsistent with the genei’al laws of this state.’ ” (C. 11.)
 

 The exemptions to the Alabama Clean Indoor Air Act set out at § 22-15A-4(a), ax*e as follows:
 

 “No pei’son shall smoke in a public place or at a public meeting except as otherwise pi’ovided in this subsection and in Section 22-15A-7. This prohibition does not apply in any of the following places:
 

 “(1) Bars and lounges.
 

 “(2) Retail tobacco stores and tobacco businesses.
 

 “(3) Limousines used under pi’ivate hire by an individual or corporation.
 

 “(4) Hotel and motel rooms irnted to guests, except for those rooms designated by the hotels and motels as ‘no smoking’ rooms.”
 

 Despite Gann’s contentions, the provisions of Ordinance no. 1478 do not conflict with the Alabama Clean Indoor Air Act and, therefore, the Act does not run afoul of § 89, Ala. Const.1901.
 

 “ ‘ “ ‘Whether an oi’dinance is inconsistent with the genei'al law of the State is
 
 *249
 
 to be determined by whether the municipal law prohibits anything which the State law specifically permits.’ ” ’
 
 Gibson v. City of Alexander City,
 
 779 So.2d 1153, 1155 (Ala.2000) (quoting
 
 Lanier v. City of Newton,
 
 518 So.2d 40, 43 (Ala.1987), quoting in turn
 
 Congo v. State,
 
 409 So.2d 475, 478 (Ala.Crim.App.1981)). In
 
 Lanier v. City of Newton,
 
 this Court addressed ‘inconsistency’ with regard to a conflict between a statute and an ordinance, stating: ‘ “Inconsistent” is defined by Black’s Law Dictionary (5th ed.1979) as “mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other.” It implies “contradiction — qualities which cannot coexist— not merely a lack of uniformity in details.”
 
 City of Montgomery v. Barefield,
 
 1 Ala.App. 515, 523, 56 So. 260, 262 (1911).’ 518 So.2d at 43.
 

 “In
 
 Gibson, supra,
 
 a café owner brought an action challenging the city’s authority to adopt an ordinance restricting the sale of alcoholic beverages between midnight and 7 a.m., where the café owner had a license issued under the statutory provisions of the Alcoholic Beverage Licensing Code that allowed him to sell liquor 24 hours a day, 6 days a week. This Court held that the City’s ordinance merely enlarged upon the statutory provisions of the Alcoholic Beverage Licensing Code and that it was not inconsistent with Alabama statutory law.
 

 “In
 
 City of Montgomery v. Barefield,
 
 1 Ala.App. 515, 56 So. 260 (1911), the court examined an alleged conflict between a city ordinance and statutes regarding work on public roads, which provided that all residents of a municipality over the age of 45 were exempt from road duty and that the inhabitants of a municipality were exempt from woi’king on the roads outside the municipality but could be required to pay a street tax for maintenance and construction of the streets within the municipality. The city passed an ordinance that imposed an annual street tax on all residents between the ages of 21 and 45 and required those failing to pay the annual street tax to work the roads in the city. The appellate court held that the ordinance and the statutes were not in conflict, stating:
 

 “‘The ordinance in question strikes down the provisions of no general law, is not repugnant to it, does not infringe its spirit, and is not in contravention of or in conflict with the operation or enforcement of the general law relating to the performance of road duty. The laws are not contradictory of nor repugnant to each other; they may both coexist and be enforced at the same time, without dependence one upon the other. Each has a separate field of operation in which it may be enforced. The city law specifies no particular persons as exempt, and makes a somewhat different class liable to the payment of street tax than are liable to the performance of road duty under the provisions of the law requiring persons to work the roads, but the constitutional requirement is not for
 
 conformity
 
 in the laws; it is that they shall not be
 
 inconsistent,
 
 and inconsistent implies contradiction — qualities which cannot coexist — not merely a lack of uniformity in details.’
 

 “1 Ala.App. at 523, 56 So. at 263. In
 
 City of Mobile v. Collins,
 
 24 Ala.App. 41, 130 So. 369 (1930), the appellate court held that a city ordinance levying a street tax on men between the ages of
 
 *250
 
 21 and 60 was not inconsistent with the same statutes at issue in
 
 Barefield.
 

 “In Congo v. State, supra,
 
 a criminal defendant argued that a municipal ordinance charging the offense with which he was charged — drunkenness on any street or other public place — was in conflict with a State statute providing that a person commits the crime of public intoxication if he appears in public under the influence to the degree that he endangers himself or another or his boisterous or offensive conduct annoys another person. Specifically, the defendant contended that the city ordinance was in conflict with the statute, and was therefore unconstitutional, because, he argued, the city ordinance prohibited merely being in a state of drunkenness whereas the statute required some manifestation of endangering or annoying conduct in addition to the intoxication. The Court of Criminal Appeals held that the city ordinance did not contravene a State statute and that it did
 
 not
 
 prohibit something the State statute affirmatively allowed.
 

 “In the present case, Alabama Recycling contends that the ordinance and the Act are in conflict because the Act permits cash purchases of copper for up to $100 and up to $1,000 for other metals and the ordinance prohibits any cash transactions for copper. The Act prohibits a metals recycler from purchasing copper with cash if the transaction is over $100, while the ordinance expands the cash prohibition to
 
 all
 
 transactions for the purchase of copper. The Act does not ‘specifically permit’ cash purchases of copper at or below $100 in value. It simply does not regulate such purchases. The fact that the Act does not regulate purchases of $100 or less does not create a conflict with the ordinance, which does regulate such purchases. In other words, the Act does not prohibit payment by check for purchases of copper under $100. This portion of the ordinance does not conflict with the statute because the ordinance enlarges upon the provisions of the Act by adding certain restrictions.”
 

 Alabama Recycling Ass’n v. City of Montgomery,
 
 24 So.3d 1085, 1088-90 (Ala.2009).
 

 In the present case, Ordinance no. 1478 does not include provisions that could not coexist -with the Alabama Clean Indoor Air Act or that would require the abrogation or abandonment of the Act. Both the ordinance and the Act are established for the same purpose and follow the same basic guidelines for enforcement and implementation; the penalty for violations of each are also similar.
 
 [4]
 
 The ordinance and the Act differ only as to details.
 

 “Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances.”
 

 § 11-45-1, Ala.Code 1975.
 

 In
 
 Plump v. City of Birmingham,
 
 385 So.2d 1349 (Ala.Crim.App.1980), Plump argued that an ordinance prohibiting public intoxication conflicted with the
 
 *251
 
 statute proscribing the same, because the ordinance added language disallowing “ ‘staggering, falling, or sleeping’ ” while intoxicated in public. 385 So.2d at 1350. Although the statute listed as manifestations of intoxication only: “ ‘boisterous or indecent conduct or loud and profane conduct,’ ” the addition of the “staggering, falling, or sleeping” language in the ordinance created no conflict with the statute.
 
 Id.
 
 In so holding, this Court stated:
 

 “An ordinance which merely enlarges upon the provisions of the statute on the subject by the requirement of more restrictions than the statute requires creates no conflict unless the statute limits the requirement for all cases to its own prescription.
 
 City of Birmingham v. West,
 
 236 Ala. 434, 183 So. 421, 423 (1938);
 
 Smith v. Town of Notasulga,
 
 257 Ala. 382, 59 So.2d 674 (1952);
 
 State v. Centanne,
 
 265 Ala. 35, 89 So.2d 570 (1956);
 
 Moon v. State,
 
 48 Ala.App. 127, 262 So.2d 615 (1972).”
 

 385 So.2d at 1350. Just as the ordinance in
 
 Plump
 
 merely added certain behaviors that manifest public intoxication or drunkenness, the ordinance in the present case merely adds forums to the prohibition of smoking. This addition does not conflict with the subject or purpose of the State law. Section 22-15A-10, Ala.Code 1975, a part of the Alabama Clean Indoor Air Act, provides that “[njothing in this chapter shall be construed to restrict the power of any county, city, town, or village to adopt and enforce local laws, ordinances, or regulations that comply with at least the minimum applicable standards set forth in this chapter.” This provision, which we earlier in this opinion held did not run afoul of § 89, Ala. Const. 1901, because it did not authorize the passing of any laws inconsistent with the laws of Alabama, clearly authorized the City of Gulf Shores to enact Ordinance no. 1478.
 

 Similarly, in
 
 Foothills Brewing Concern, Inc. v. City of Greenville,
 
 377 S.C. 355, 660 S.E.2d 264 (2008), after the South Carolina Legislature passed its version of the Clean Indoor Air Act, the City of Greenville sought “to more comprehensively regulate smoking in public places.” 377 S.C. at 359, 660 S.E.2d at 266. Therefore, the ordinance prohibited smoking in: “(1) all enclosed public places, including bars and restaurants; (2) places of employment; and (3) certain outdoor areas, such as stadiums and zoos.” 377 S.C. at 360, 660 S.E.2d at 266. South Carolina’s Clean Indoor Air Act had listed: “(1) public schools; (2) daycare centers; (3) health care facilities; (4) government buildings; (5) elevators; (6) public transportation vehicles; and (7) public performing arts centers.” 377 S.C. at 359, 660 S.E.2d at 266. The South Carolina Supreme Court held that the ordinance was not preempted by state law and that it did not violate the State Constitution or the general law of South Carolina. The Court stated:
 

 “To preempt an entire field, ‘an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way.’
 
 Bugsy’s[, Inc. v. City of Myrtle Beach],
 
 340 S.C. [87] at 94, 530 S.E.2d [890] at 893 [2000] (citing
 
 Town of Hilton Head Island v. Fine Liquors, Ltd.,
 
 302 S.C. 550, 397 S.E.2d 662 (1990)). Furthermore, ‘for there to be a conflict between a state statute and a municipal ordinance “both must contain either express or implied conditions which are inconsistent or irreconcilable with each other .... If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand.” ’
 
 Town of Hilton Head Island v. Fine Liquors, Ltd.,
 
 302 S.C. at 553, 397 S.E.2d at 664 (quoting
 
 McAbee v. Southern Rwy., Co.,
 
 166 S.C. 166, 169-70, 164 S.E. 444, 445 (1932)).”
 

 
 *252
 

 Foothills Brewing Concern, Inc.,
 
 377 S.C. at 361, 660 S.E.2d at 267.
 

 Because Ordinance no. 1478 does not conflict with the Alabama Clean Indoor Air Act, because the Act does not violate § 89 of the Alabama Constitution, and because Gann had no standing to assert the abrogation of private property rights by the City of Gulf Shores’ use of its police power through the ordinance, the circuit court properly denied Gann’s motion to dismiss and her motion for judgment of acquittal. Based on the foregoing, the judgment of the circuit court is due to be affirmed.
 

 AFFIRMED.
 

 WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.
 

 [1]
 

 . The response to the motion to dismiss was filed on March 12, 2008, preceding Gann's motion to dismiss, which was filed on April 16, 2008. However, Gann's motion filed in the Baldwin Circuit Court was a verbatim copy of the motion to dismiss she had filed in the Gulf Shores Municipal Court.
 

 [2]
 

 . Under section 9 of Ordinance no. 1478, the following areas are exempted from the prohibition against smoking: private residences, except if the residence is used as a licensed day-care, adult-day-care, or health-care facility; motel and hotel rooms designated as smoking; retail tobacco stores; private and semiprivate rooms in nursing homes and long-term-care facilities wherein all the occupants of the room are smokers; outdoor areas of places of employment except certain outdoor arenas and stadiums; all beaches, public or private; and outdoor areas of restaurants, including porches, decks, verandas, and serving areas that are not covered or enclosed. Most of these exemptions apply only where smoke does not infiltrate into areas in which smoking is prohibited.
 

 [3]
 

 . In fact, the record contains an affidavit of Pam Welsh, which was attached as Exhibit A to Gann’s pretrial motion to dismiss filed in the Baldwin Circuit Court, in which Welsh affirms that she is "the sole shareholder, director, and officer” of After Hours, Inc., the entity that owns and operates the After Hours bar. (C. 63).
 

 [4]
 

 . Ordinance no. 1478 in section 15 states that a violation of the ordinance is a misdemeanor that results in a fine not to exceed $50; a violation of the Alabama Clean Indoor Air Act is to be treated in the district or the municipal court and carries a fine of $25 for each violation. § 22-15A-9, Ala.Code 1975.